IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GRAYSON HOWSON<br>AKA SYERRA HOWSON<br>2826 North Ridge Road<br>Trailer 44<br>Perry, Ohio 44081<br><br>**Plaintiff,**<br><br>v.<br><br>WAL-MART ASSOCIATES, INC.<br>c/o CT Corporation System<br>4400 Easton Commons, Suite 125<br>Columbus, Ohio 43219<br><br>and<br><br>WAL-MART STORES EAST, LP<br>c/o CT Corporation System<br>4400 Easton Commons, Suite 125<br>Columbus, Ohio 43219<br><br>**Defendant.** | CASE NO.<br><br>JUDGE<br><br>**COMPLAINT WITH JURY DEMAND** |

## NATURE OF THE CASE

1. Plaintiff Grayson Howson[1] brings this civil action to redress discriminatory work conditions and harassment that he experienced during his employment at the Walmart store in Chardon, Ohio. Plaintiff Howson further seeks relief for being unlawfully terminated based on his sex, gender identity, and sexual orientation, and in retaliation for reporting the unlawful harassment he had endured.

---

[1] Grayson Howson is Plaintiff's preferred name and the name he used during all events relevant to this civil action. His legal name, at the time of this filing, is Syerra Howson.

2. This action centers on the right of Plaintiff Howson, a transgender man, to equal treatment at work, free from discrimination based on his gender identity, under Title VII of the Civil Rights Act of 1964. *See Bostock v. Clayton County*, 590 U.S. 644 (2020).

3. Walmart's managers declined to take meaningful remedial action in response to Mr. Howson's reports of transgender-based harassment by Walmart customers and coworkers. But when Mr. Howson's main harasser instigated a tense interaction with him, Defendant Walmart used the incident as a pretext to terminate Mr. Howson — while retaining his harasser.

## JURISDICTION & VENUE

4. Jurisdiction over federal claims under Title VII of the Civil Rights Act of 1964 is asserted under 28 U.S.C. §§ 1331 and 1343(a)(4). This Court has jurisdiction over all state-law claims under 28 U.S.C. § 1367.

5. The Court has jurisdiction over state-law claims under 28 U.S.C. § 1367.

6. The Court has jurisdiction over the parties under 28 U.S.C. § 1391, and venue is proper here because the events at issue took place in this jurisdiction.

## PARTIES

7. Plaintiff Grayson Howson resides in Lake County, Ohio. Defendants employed Plaintiff to work as a stock associate at its store in Chardon, Ohio.

8. Defendants Wal-Mart Associates, Inc. and Wal-Mart Stores East LP (collectively "Walmart" and "Defendant Walmart") hired Plaintiff as a stock associate in May 2023. During all times relevant to this action, Plaintiff was an employee of Defendants.

9. Defendant Wal-Mart Associates, Inc. is a Delaware corporation, and Wal-Mart Stores East LP is Delaware limited partnership. Both entities are registered to do business in the State of Ohio and were responsible for and involved in the operation of the Walmart store located at 223 Meadowlands Drive, Chardon, Ohio 44024.

## FACTS

### Defendant Walmart hires Plaintiff Howson to be a stock associate.

10. Plaintiff Grayson Howson is a transgender man. He was assigned female at birth. Plaintiff received gender-affirming care and began living his life openly as a man prior to being hired by Walmart.

11. In May 2023, Defendant Walmart hired Mr. Howson to work as a Stock 2 associate at its store in Chardon, Ohio.

12. Mr. Howson did not make Defendant Walmart aware that he is transgender until after Walmart hired him, when he had to specify his preferred name for his name tag (Grayson) and submit his identification documents, which used his birth name (Syerra).

13. Mr. Howson was the only transgender employee at the store throughout his employment.

14. Mr. Howson was a reliable employee and did his job well.

15. Throughout his employment, the sole disciplinary action Mr. Howson received was when Defendant Walmart suspended and terminated him at the end of his employment.

### Customers come to the Walmart store to harass Mr. Howson.

16. In or around June 2023, weeks after Walmart hired Mr. Howson, a group of teenage customers entered the store and harassed him.

17. Soon after the first incident, the same group of teenagers began entering the store regularly. Nearly every week, the teenagers sought Mr. Howson out and harassed him because of his sex, gender identity, and sexual orientation. The teenagers did not harass any other Walmart employees.

18. The teenagers followed him around the store. They distracted him, insulted him, and called him a "faggot."

19. On at least one occasion, the teenagers waited outside the store near Mr. Howson's car and threw trash at Mr. Howson's car while he was on his lunch break.

20. The teenagers continued to come to the store on a near-weekly basis to harass Mr. Howson until his termination.

### A Walmart coworker, Delrio Pollard, also begins harassing Mr. Howson because of his gender identity.

21. In or around July 2023, Delrio Pollard, another stock associate, began harassing Mr. Howson because of his gender identity.

22. Mr. Pollard often followed Mr. Howson around the store, glaring at him, raising his middle finger, and calling him a "faggot."

23. Howson understood Mr. Pollard's harassment to be motivated by his transgender identity.

24. Mr. Pollard's harassment became more frequent near the end of Mr. Howson's employment.

### Walmart managers fail to reasonably address Mr. Howson's reports of harassment.

25. In late-June 2023, Mr. Howson verbally reported to Tiffany Miller, the Asset Protection Manager for the store, that the teenagers had been following him around and calling him a "faggot".

26. Ms. Miller dismissed Mr. Howson's concerns and claimed she was unable to take any action against the teenage harassers because they were minors.

27. Sometime after Mr. Howson reported the harassment to Ms. Miller, she approached Keith Stepanic, a Deli Team Lead, and expressed to him her skepticism and disregard for Mr. Howson's harassment complaint.

28. Despite Ms. Miller's disregard, Mr. Howson continued to report the harassment to other members of the store management at Walmart.

29. In or around July 2023, Mr. Howson reported to his team lead, Josh Eldritch, that Mr. Pollard was following him around, and calling him a "faggot".

30. Mr. Eldritch did not address Howson's concerns about Pollard. Instead, Eldritch told him that he had to be the "bigger person" and not react to the harassment.

31. After Eldritch failed to respond, Howson reported Pollard's harassment to a second-shift manager, named Ralph, who told him he didn't have time to deal with "childish games" and that Mr. Howson just had to "deal with it".

32. None of Walmart's managers expressed or showed a desire to help Howson in response to his reports of harassment, and they took minimal-to-no steps to address the ongoing harassment.

33. In September 2023, Mr. Howson again reported Mr. Pollard's harassment to Tiffany Miller, and she again disregarded his complaint.

34. The same month, Mr. Howson went to Michael, the store's People Partner Representative, who was standing with Ms. Miller at the time. Mr. Howson reported that Mr. Pollard had been following him and calling him a "faggot." Neither Ms. Miller nor Michael took corrective action.

35. In or around September 2023, with the harassment from Pollard and the teenage customers was still ongoing, Howson reported the harassment to Gena, a Stock 2 Coach (i.e. supervisor), who also did not take any action to remedy the continued harassment.

36. Later in September 2023, Howson reported the harassment to Rachel, a 3rd shift coach. Rachel had Howson fill out a written statement detailing the harassment, which he gave to Rachel. This was the first and only time Howson was given the opportunity to submit a written report of the teenagers' harassment he had been complaining about for over four months.

37. In the statement, Mr. Howson reported that the teenagers had been harassing him for several months. That they followed him around, called him a "faggot", and did so nearly every week.

38. In or around October, Mr. Howson also wrote a statement describing Mr. Pollard's harassment. He detailed how Mr. Pollard had been following him, raising his middle finger at Howson, and using aggressive language toward him.

39. After submitting his written reports of harassment, Walmart's managers gave Mr. Howson permission to carry a radio during his shifts with the idea that he could report when the teenagers were in the store harassing him.

40. Walmart's decision was an empty gesture, as managers often refused to give Mr. Howson a radio. And while the radios allowed Mr. Howson to report the whereabouts of and harassment from the teenagers in real time, Walmart's managers did not reasonably respond to those reports.

41. From September 2023 until his termination on November 12, 2023, Mr. Howson reported that the teenagers were in the store harassing him on numerous occasions. Rather than directly intervene or confront the teenagers, managers directed Mr. Howson to go to a different area of the store. When Walmart sent Mr. Howson to different areas of the store to avoid the teenage harassers, the teenagers simply walked to the new area and continued harassing him. Mr. Howson reported the harassment was continuing, but his pleas for intervention by Walmart fell on deaf ears.

42. Walmart's actions proved to do nothing but embolden the teenagers to continue frequenting the store to do nothing other than harass Mr. Howson.

### Mr. Pollard instigates a tense interaction with Mr. Howson and threatens to assault him.

43. On or around November 11, 2023, Walmart managers assigned Mr. Howson and four other stock associates, including Mr. Pollard, to unload a semi-trailer. While Mr. Howson and

two of the employees worked to complete the task, Pollard shirked his duties. He instead rested on boxes of merchandise and ate candy.

44. Around 4:00 pm, Mr. Howson asked Pollard to help the team with unloading the semi-trailer. Pollard still refused to help. Soon after, a box jammed the conveyor belt used to move and sort merchandise. Mr. Howson removed the box and tossed it on the floor in Pollard's direction and insisted that he help complete their assigned task.

45. Pollard then stood up and charged at Howson, stopping directly in front of Howson's face. Pollard then berated and intimidated Howson by posturing himself as if to fight.

46. Josh Eldritch, who was standing inside the warehouse during the exchange, heard the commotion. Eldritch entered the semi-trailer and separated Howson and Pollard.

47. Mr. Eldritch did not see most of the incident.

48. The other three coworkers who were assisting with unloading the semi-trailer witnessed the entire interaction between Howson and Pollard.

49. Eldritch took Pollard to the store's office where Pollard wrote his statement recounting what happened in the trailer.

50. While Pollard was writing his statement, Howson took his meal break. When he came back, Pollard had finished his statement and started following Howson around the store. He trailed Howson to his locker and glowered at Howson.

51. Howson reported to both Eldritch and Terry, the Apparel Department team lead, that Pollard was following him and making him feel unsafe. Mr. Howson decided he felt too unsafe to remain at the store with Mr. Pollard, so he requested to use his accrued paid time off to leave his shift early.

52. In response, Eldritch told Howson to "do what [he needed] to do." But before he left, Eldritch had Howson write his own account of the incident.

53. None of the three coworkers in the semi-trailer who witnessed the full exchange were asked for or given an opportunity to provide statements.

### After a flawed, perfunctory investigation of the incident, Walmart fires Mr. Howson but retains his harasser.

54. Tiffany Miller, who had ignored Mr. Howson's reports of harassment by customers and Mr. Pollard for several months, was responsible for overseeing Walmart's investigation into the incident on November 11, 2023.

55. During Mr. Howson's employment, Ms. Miller had also publicly expressed negative views towards transgender individuals, specifically by referring to drag queens as sexual predators.

56. Miller did not interview anyone as part of the investigation.

57. Miller never discussed the incident with Howson.

58. Miller did not attempt to gather statements, verbal or written, from the three coworkers who witnessed the entire exchange between Howson and Pollard.

59. By ignoring obvious and readily available sources of relevant information, Walmart failed to conduct a good-faith investigation into the incident on November 11, 2023.

60. An unbiased, good-faith investigation of the incident would have revealed that Howson — who had no prior record of workplace discipline — had done nothing during the incident to justify him being disciplined, let alone terminated.

61. However, around 11 am on November 12, 2023, Walmart informed Howson it was terminating his employment.

62. Walmart informed Howson of his termination during a telephone meeting with Ms. Miller, Yvonne, the store manager, and Brenda, an HR representative.

63. The managers told Howson that they were terminating his employment because he had struck Pollard with a box.

64. The managers claimed they had video footage showing Howson had hit Pollard with a box.

65. Howson did not strike Pollard with a box.

66. Howson asked to see the video footage, but the managers refused to show him.

67. Howson further asked if the store's video footage captured Pollard following him around and threatening him after the incident. The managers responded that it was irrelevant, and Howson could not argue with the footage.

68. Walmart did not raise any concerns about Mr. Howson's productivity or work performance.

69. While Howson was quickly fired, Walmart retained Pollard as an employee.

70. Since Howson's termination, Pollard has, on at least one other occasion, sought to instigate a fight with a coworker at Walmart. And Walmart retained him as an employee nonetheless.

**Walmart changes its reason for terminating Mr. Howson.**

71. Following the termination meeting with Walmart's managers, Mr. Howson submitted an internal appeal of his termination to Walmart's ethics department.

72. Howson followed up with a representative from the ethics department who stated that the company's evidence did not show that Howson physically struck Pollard.

73. Still, Walmart's ethics department declined to reverse the termination, claiming that it believed that Howson had intended to hit Pollard.

**After Mr. Howson files a charge with the Equal Employment Opportunity Commission, Walmart threatens to retaliate against any employee who cooperates with its investigation.**

74. On June 2, 2024, after Walmart became aware of the charge of discrimination Mr. Howson filed with the Equal Employment Opportunity Commission, Walmart held a staff meeting.

75. In that meeting, Walmart managers told the staff at the Chardon store that Mr. Howson was suing Walmart for discrimination.

76. Walmart explained that Howson was reaching out to employees for support, and they named an employee whom Walmart was aware had been contacted by Howson.

77. Walmart managers then stated that Walmart would terminate any employee that signed a witness statement in relation to Mr. Howson's claims.

## Legal Claims

### Claim 1
### Discrimination (Disparate Treatment) under Title VII
### 42 U.S.C. § 2000e, et seq.

78. Plaintiff realleges and reincorporates by reference all of the above paragraphs.

79. Under Title VII of the Civil Rights Act of 1964, it is an unlawful employment practice for an employer to discriminate in a manner against any employee because of their sex, gender identity, or sexual orientation. 42 U.S.C. § 2000e-2(a).

80. Defendants intentionally and maliciously discriminated against Plaintiff Howson based on his sex, gender identity, and sexual orientation, including by:

   a. subjecting him to harsher discipline, including termination, than other employees;

   b. failing to take corrective action in response to his reports of workplace harassment.

81. Under 42 U.S.C. § 2000e-5(f), a person aggrieved by a violation of 42 U.S.C. § 2000e2(a) may bring a civil action for damages, injunctive relief, attorneys' fees, and any other appropriate relief.

82. Defendants are vicariously liable for their employees' acts towards Plaintiff.

83. As a direct and proximate result of Defendants' discrimination, Mr. Howson has suffered and will continue to suffer economic and non-economic damages, for which Defendants are liable, including but not limited to, pain and suffering, emotional distress, inconvenience, the loss of salary, wages and benefits, and other terms, privileges, and conditions of employment.

84. Mr. Howson is entitled to punitive damages and attorneys' fees based on Defendants' conduct.

85. Defendants' acts were wanton, willful, egregious, and malicious, and are worthy of sanction to punish and deter it and others from engaging in this type of unlawful conduct.

### Claim 2
### Hostile Work Environment under Title VII
### 42 U.S.C. § 2000e, et seq.

86. Plaintiff realleges and reincorporates by reference all of the above paragraphs.

87. Under Title VII of the Civil Rights Act of 1964, it is an unlawful employment practice for an employer to discriminate in a manner against any employee because of their sexual orientation or gender identity. 42 U.S.C. § 2000e-2(a).

88. During his employment, Plaintiff Howson was subjected to harassment by a male co-worker, Delrio Pollard, and by a group of teenage customers, based on his sexual orientation and gender identity — including but not limited to:

   c. Mr. Pollard and the teenagers singling out Plaintiff Howson and following him around the store.

   d. Mr. Pollard and the teenagers calling Plaintiff Howson a "faggot".

   e. Mr. Pollard making rude hand gestures to Plaintiff Howson.

   f. Other unprompted offensive acts of aggression and disrespect toward Plaintiff Howson.

89. Plaintiff promptly reported the acts of harassment to his superiors, including Josh Eldritch, Tammy Miller, human resources, and other members of management.

90. The harassment created an objectively intimidating, hostile, and offensive work environment.

91. Plaintiff Howson reported to his managers that, because of the pattern of harassment, he felt threatened, scared, and anxious at work.

92. By diminishing and discounting Plaintiff Howson's reports of harassment, Walmart's managers perpetuated the harassment.

93. Walmart's managers failed to investigate Plaintiff's reports of harassment in good faith, and they failed to take appropriate corrective actions to address the harassment.

94. Under 42 U.S.C. § 2000e-5(f), a person aggrieved by a violation of 42 U.S.C. § 2000e2(a) may bring a civil action for damages, injunctive relief, attorneys' fees, and any other appropriate relief.

95. Defendants are vicariously liable for their employees' acts and inaction towards Plaintiff Howson.

96. As a direct and proximate result of Defendants' hostile work environment, Plaintiff Howson has suffered and will continue to suffer economic and non-economic damages, for which Defendants are liable, including but not limited to, pain and suffering, emotional distress, inconvenience, and other negative impacts on the terms, privileges, and conditions of employment.

97. Plaintiff Howson is entitled to punitive damages and attorneys' fees based on Defendants' conduct.

98. Defendants' acts were wanton, willful, egregious, and malicious, and are worthy of sanction to punish and deter them and others from engaging in this type of unlawful conduct.

**Claim 3**

## Retaliation under Title VII
## 42 U.S.C. § 2000e-3(a)

99. Plaintiff realleges and reincorporates by reference all of the above paragraphs.

100. Under Title VII of the Civil Rights Act of 1964, it is unlawful for any employer to discriminate against an employee because they opposed an unlawful employment practice, including workplace harassment based on sex, gender identity, and sexual orientation.

101. During his employment with Walmart, Plaintiff Howson engaged in protected activity under Title VII by reporting to managers and human resources numerous times that Delrio Pollard and some customers made harassing comments to him that referenced his sex, gender identity, and sexual orientation, as well as committing other offensive acts because of his sex, gender identity, and sexual orientation.

102. Defendants' managers intentionally and maliciously discriminated and retaliated against Plaintiff Howson because of his protected activity by suspending him and terminating his employment.

103. Defendants' managers have threatened to terminate any Walmart employee that participates in the investigation or litigation of Mr. Howson's claims of harassment, discrimination, and retaliation.

104. Defendants' retaliatory actions protected Mr. Howson's harassers from further scrutiny of their actions, inhibited the Equal Employment Opportunity Commission's investigation into Mr. Howson's charge of discrimination, and thus ratified and enabled the alleged harassers' behavior.

105. Under 42 U.S.C. § 2000e-5(f), a person aggrieved by a violation of 42 U.S.C. § 2000e3(a) may bring a civil action for damages, injunctive relief, attorney's fees, and any other appropriate relief.

106. Defendants are vicariously liable for their employees' acts towards Plaintiff.

107. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered and will continue to suffer economic and non-economic damages, for which Defendants are liable, including but not limited to, pain and suffering, emotional distress, inconvenience, the loss of salary, wages and benefits, and other terms, privileges, and conditions of employment.

108. Plaintiff Howson is entitled to punitive damages and attorneys' fees based on Defendants' conduct.

109. Defendants' acts were wanton, willful, egregious, and malicious, and are worthy of sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### Claim 4
### Discrimination (Disparate Treatment)
### under Ohio Rev. Code §§ 4112.02(A) and 4112.052

106. Plaintiff realleges and reincorporates by reference all of the above paragraphs.

107. Under Ohio Rev. Code § 4112.02(A), it is an unlawful employment practice for an employer to discriminate in any manner against an employee because of his sex, gender identity, or sexual orientation.

108. Defendants intentionally and maliciously discriminated against Plaintiff Howson based on his sex, gender identity, and/or sexual orientation.

109. Under Ohio Rev. Code § 4112.052(B), whoever violates Ohio Rev. Code § 4112.02(A) is subject to a civil action for damages, injunctive relief, and any other appropriate relief.

110. Defendants are vicariously liable for their employees' acts towards Plaintiff.

111. As a direct and proximate result of Defendants' discrimination, Plaintiff has suffered and will continue to suffer economic and non-economic damages, for which Defendants are liable,

including but not limited to, pain and suffering, emotional distress, inconvenience, the loss of salary, wages and benefits, and other terms, privileges, and conditions of employment.

112. Mr. Howson is entitled to punitive damages and attorneys' fees based on Defendants' conduct.

113. Defendants' acts were wanton, willful, egregious, and malicious, and are worthy of sanction to punish and deter them and others from engaging in similar unlawful conduct.

### Claim 5
### Hostile Work Environment under Ohio Rev. Code §§ 4112.02(A) and 4112.052

114. Plaintiff realleges and reincorporates by reference all of the above paragraphs.

115. Under Ohio Rev. Code § 4112.02(A), it is an unlawful employment practice for an employer to discriminate in any manner against an employee because of his sex, gender identity, or sexual orientation.

116. During his employment, Plaintiff Howson was subjected to harassment by a male coworker, Delrio Pollard, and numerous customers based on his sex, gender identity, and sexual orientation — including but not limited to:

   a. Mr. Pollard and the teenagers singling out Plaintiff Howson and following him around the store.

   b. Mr. Pollard and the teenagers calling Plaintiff Howson a "faggot".

   c. Mr. Pollard making rude hand gestures to Plaintiff Howson.

   d. Other unprompted offensive acts of aggression and disrespect toward Plaintiff Howson.

117. Plaintiff promptly reported the acts of harassment to the store's Asset Protection Manager, Tiffany Miller, human resources, and other members of management.

118. The harassment created an objectively intimidating, hostile, and offensive work environment.

119. Walmart's managers failed to investigate Plaintiff's reports of harassment in good faith, and they failed to take appropriate corrective actions to address the harassment.

120. Under Ohio Rev. Code § 4112.052(B), whoever violates Ohio Rev. Code § 4112.02(A) is subject to a civil action for damages, injunctive relief, and any other appropriate relief.

121. Defendants are vicariously liable for its employees' acts and inaction towards Plaintiff.

122. As a direct and proximate result of Defendants' conduct, Mr. Howson has suffered and will continue to suffer economic and non-economic damages, for which Defendants are liable, including but not limited to, pain and suffering, emotional distress, inconvenience, and the loss of other terms, privileges, and conditions of employment.

123. Plaintiff Howson is entitled to punitive damages and attorneys' fees based on Defendants' conduct.

124. Defendants' acts and inaction were wanton, willful, egregious, and malicious, and are worthy of sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### Claim 6
### Retaliation under Ohio Rev. Code §§ 4112.02(I) and 4112.052

125. Plaintiff realleges and reincorporates by reference all of the above paragraphs.

126. Under Ohio Rev. Code § 4112.02(I), it is an unlawful employment practice for any person to discriminate in any manner (i.e. retaliate) against an employee because they opposed unlawful discriminatory practices, including workplace harassment based on sex, gender identity, or sexual orientation.

127. During his employment with Walmart, Plaintiff Howson engaged in protected activity under Ohio Rev. Code § 4112.02(I), by reporting to his manager and human resources

multiple times that Delrio Pollard and several customers made harassing comments to him relating to his sex, gender identity, and sexual orientation.

128. Defendants' managers intentionally and maliciously discriminated and retaliated against Plaintiff Howson because of his protected activity by suspending him and terminating his employment.

129. Defendants' managers have threatened to terminate any Walmart employee that participates in the investigation or litigation of Mr. Howson's claims of harassment, discrimination, and retaliation.

130. Defendants' retaliatory actions protected Mr. Howson's harassers from further scrutiny of their actions, inhibited the Equal Employment Opportunity Commission's investigation into Mr. Howson's charge of discrimination, and thus ratified and enabled the alleged harassers' behavior.

131. Under Ohio Rev. Code § 4112.052(B), any person who violates Ohio Rev. Code § 4112.02(I) is subject to a civil action for damages, injunctive relief, and any other appropriate relief.

132. Defendants are vicariously liable for their employees' acts towards Plaintiff.

133. As a direct and proximate result of Defendants' retaliation, Plaintiff Howson has suffered and will continue to suffer economic and non-economic damages, for which Defendants are liable, including but not limited to, pain and suffering, emotional distress, inconvenience, the loss of salary, wages and benefits, and other terms, privileges, and conditions of employment.

134. Plaintiff Howson is entitled to punitive damages and attorneys' fees based on Defendants' conduct.

135. Defendants' acts were wanton, willful, egregious, and malicious, and are worthy of sanction to punish and deter them and others from engaging in this type of unlawful conduct.

## JURY DEMAND

Plaintiff demands a trial by jury for all counts so triable.

## PRAYER FOR RELIEF

Plaintiff Howson requests that the Court render judgment in his favor on all counts against Defendants, and grant the following relief:

a. Declare that Defendant's actions and conduct violated federal and Ohio law;
b. Enter judgment in Plaintiff Howson's favor on all claims for relief;
c. Award Plaintiff full compensatory damages in an amount to be determined at trial;
d. Award Plaintiff punitive damages as appropriate for all intentional and malicious violations of federal and Ohio law;
e. Award Plaintiff pre-judgment interest on all monetary awards at the highest lawful rate;
f. Award Plaintiff reasonable attorney's fees and all other costs incurred for this action; and
g. Grant such other relief in law or equity that this court deems just and equitable.

Dated: May 9, 2025

Respectfully submitted,

_____
Nicholas D. Kerr (Ohio Bar No. 0101421)
 Phone: (216) 297-7962
 Email: Nicholas.Kerr@lasclev.org
Patrick C. Haney (Ohio Bar No. 0092333)
 Phone: (216) 861-5617
 Email: Patrick.Haney@lasclev.org
THE LEGAL AID SOCIETY OF CLEVELAND
1223 W. 6th Street
Cleveland, Ohio 44113
Fax: (216) 861-0704

*Attorneys for Plaintiff Grayson Howson*